IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,          )
                                   )
              Plaintiff,           )          4:06CR3052
                                   )
        v.                         )
                                   )
DAVID M. GARLEWICZ,                )          REPORT, RECOMMENDATION
                                   )               AND ORDER
              Defendant.           )
_____)

     The defendant has filed a motion to suppress statements he
provided to Kearney Police Officer Douglas McCarty ("Officer
McCarty") on October 20 and November 3, 2005.  Filing 13.  As to
the October 20, 2005 statement, the defendant claims that after
his arrest, he was taken to the Buffalo County jail and subjected
to custodial interrogation in violation of his Fifth Amendment
rights.  Filing 13, ¶¶ 2, 5.  The defendant further claims that
as of November 1, 2005, he was facing state charges and
represented by counsel appointed by the County Court of Buffalo
County, Nebraska.  The defendant claims his November 3, 2005
statement must be suppressed under the Sixth Amendment because
the defendant's counsel was not present during and did not
consent to the interrogation conducted by Officer McCarty.
Filing 13, ¶¶ 4-6, 8.

     The defendant raised an additional argument at the close of
the suppression hearing.  The defendant claims the inculpatory
portion of his November 3, 2005 statement was made in response to
an inducement.  Specifically, he claims he was induced to
cooperate and provide a statement by Officer McCarty's express or
implied promise that he would not complete and forward a "federal
indictment package" in exchange for the defendant's cooperation.
The defendant claims his response to this inducement was, in

essence, a proffer statement, and the statement should be suppressed for the purposes of both trial and sentencing.  See United States Sentencing Commission, Guidelines Manual, § Chap. 1, Part B, subpart 1, Guideline 8 (November 1, 2005)("§ 1B1.8").

For the reasons discussed hereafter, I conclude the defendant's motion to suppress should be granted as to the defendant's October 20, 2005 statement, but denied as to the statement obtained by Officer McCarty on November 3, 2005.  I further conclude the November 3, 2005 statement was not a statement obtained as part of a § 1B1.8 cooperation agreement, and should not be suppressed under the sentencing guidelines.

**FACTUAL FINDINGS**

The Kearney Police Department suspected the defendant was engaged in illegal drug activity for at least six months prior to October 20, 2005.  Accordingly, the department was investigating the defendant, conducting surveillance at his home, and observing the movement of vehicles to and from that location.  On October 20, 2005, an officer observed a suspected illegal drug sale by the defendant to an unnamed buyer.  Officer McCarty, the full-time drug investigator for the Kearney Police Department, obtained a warrant to search the defendant's home.

When the Kearney police officers arrived to conduct the search, the defendant was escorted out of the house and detained in Officer Jay Fuller's cruiser, which was parked in the alley behind the home.  Officer Fuller remained with the defendant while the search was conducted.  Based on the evidence found during the search, Officer McCarty instructed Officer Fuller to

2

place the defendant under arrest.  Officer Fuller arrested the
defendant and then advised Officer McCarty that the defendant was
talking.

Officer McCarty proceeded to Officer Fuller's cruiser,
entered the vehicle, and promptly read the defendant his <u>Miranda</u>
rights verbatim from an advice of rights card in the officer's
wallet.  After the <u>Miranda</u> rights were read, the defendant
continued to speak with the officer and did not request a lawyer.
Officer McCarty began questioning the defendant about the
contents found in the home, but this questioning was brief and
promptly discontinued.  The defendant was fidgeting, unable to
focus, had dilated eyes, was hard to understand, and appeared to
Officer McCarty to be under the influence of methamphetamine.
Officer McCarty concluded that he should not proceed with
questioning the defendant because of the defendant's apparent
drug-induced mental state.

The defendant was transported to the Buffalo County jail.
Shortly after midnight on October 21, 2005 Officer McCarty
drafted and signed a Arrest/Detention Probable Cause affidavit
stating that scales, methamphetamine, marijuana, prescription
medications, and paraphernalia were found during the search of
the defendant's home, and methamphetamine was found on his person
at booking.  Ex. 101.  On October 21, 2005 a Buffalo County Court
judge determined there was probable cause to believe the
defendant had committed the offenses of possession of a
controlled substance, and possession with intent to deliver,
(Exhibit 101), and the defendant was formally charged with two
counts of violating Neb. Rev. Stat. § 28-416:  Possession of a
Controlled Substance with Intent to Deliver (a Class II felony),
and Possession of a Controlled Substance (a Class IV felony).

Both counts were based on the alleged illegal conduct committed
by the defendant on October 20, 2005.  Ex. 101.

The defendant remained in the custody of the Buffalo County
jail.  On October 26 and October 31, 2005 the defendant completed
written inmate request forms, commonly known as "kites,"
addressed to the county judge and asking the judge to reduce his
bond and appoint counsel to represent him.  A hearing was held in
the judge's chambers, and a public defender was appointed to
represent the defendant on November 1, 2005.  Ex. 101.  Officer
McCarty was not present during or apprised of the outcome of this
hearing.

On November 1, 2005, the defendant completed a kite which
stated, "I would like to talk to Officer McCarty head of Drug
inves[tigation] In privet [sic]."  Ex. 1.  The jail staff advised
Officer McCarty of the defendant's request.  Ex. 1.  The
defendant completed and signed another KITE the next day which
stated, "I would like to se [sic] Mr. McCarthy [sic].  Head of
Drug Dept. at he [sic] police Dept."  Ex. 2.  The jail staff
forwarded this request to Officer McCarty.  Ex. 2.  On the
morning of November 3, 2005 the defendant's stepsister met with
Officer McCarty at his office and asked the officer to speak with
the defendant.  According to the stepsister, the defendant wanted
to talk to the officer, wanted to be honest, and needed to talk
to the officer right away.

Officer McCarty generally does not speak with defendants
represented by counsel.  However, if a represented defendant
initiates the interview request, Officer McCarty will contact the
defendant without his or her counsel being present.  In most such
situations, the defendant is interested in becoming a

4

confidential informant for the officer in exchange for leniency
on the pending charges.

At approximately 10:45 a.m. on November 3, 2005 Officer
McCarty went to the Buffalo County jail to speak to the defendant
in the jail's interview room.  As the defendant and the officer
were entering the room, the officer stated that he preferred not
to speak with the defendant without his attorney present.  He
also stated, "Make sure you tell your lawyer I came down to see
you."  Officer McCarty did not actually know the defendant was
represented, but based on the common protocol used by the courts
in Buffalo County, he believed the defendant was likely
represented since state charges were pending.  Officer McCarty
did not ask the defendant to disclose the name of his counsel,
and did not attempt to speak with the defendant's counsel before
questioning the defendant.

The defendant and Officer McCarty were seated in the
interview room with a small card table between them.  A digital
recorder was located on the card table and the ensuing interview
was recorded with the defendant's knowledge.  Ex. 4.  Only the
defendant and the officer were in the room.  The officer was
unarmed.

After first confirming that the defendant still wanted to
speak to the officer and before any questioning began, Officer
McCarty advised the defendant of his <u>Miranda</u> rights by reading
each right aloud from a written advice of rights form.  Exs. 3 &
4 at 01:30.  The officer placed a checkmark on the form next to
each right as it was read.  The defendant signed the Statement of
Miranda Rights.  Ex. 3.  The defendant also signed the Waiver of
Rights, thereby acknowledging, "I have read the above statement

of my rights and I understand each of these rights and, having
these rights in mind, I waive them and willingly make a
statement." Ex. 3.  The defendant was thirty-seven years old at
the time of the interview, (ex. 4 at 06:37-39), appeared healthy,
and did not appear to be under the influence of any drugs or
alcohol.  The defendant was cordial and cooperative throughout
the interview.

      After the defendant signed the <u>Miranda</u> waiver, and before
any questioning began, the following dialogue occurred:

Officer McCarty:        Well, it's kind of a your show now.  You
                        called me.  I'm assuming you want to talk to
                        me about what's going on with the--the case.
                        And I--I'll start off by being honest with
                        you.  I never bullshit people.  I don't lie
                        to people.  I try to be as honest as
                        possible.  I wasn't lying to you.  I'm
                        putting together a federal indictment package
                        for you.  I know what you were doing.  I know
                        who you were doing it with.  And I have a
                        pretty good idea who your suppliers were.
                        So, um, honesty is going to be the best thing
                        here.  If you can convince me that, ah, it's
                        in my best interest not to go that route, ah,
                        then I'd be more than happy to talk to you.
                        If not, you know, I mean you know the road
                        you're going down, so we can work some stuff
                        out, but I'll let you have the floor.

Garlewicz:              What do you want me to do?

Officer McCarty:        Um.  What do you mean?

Garlewicz:              I'll do whatever it takes to make sure that I
                        don't get federally indicted.  Make sure that
                        I don't go to prison, uh, make sure I don't
                        [inaudible].

Ex. 4 at 02:58-4:00.  Officer McCarty did not respond to this
comment, and he never stated that if the defendant provided a

statement, the officer would forego submitting a "federal indictment package."

Officer McCarty proceeded to question the defendant about his involvement with illegal drugs, beginning with his first drug arrest at the age of eighteen.  Considering the length of the interview, the officer actually asked very few questions.  The defendant offered lengthy and detailed responses to the officer's questions, resulting in an interview that lasted nearly an hour and ended only because the officer had to attend to another matter.[1]  During the course of the interview, the defendant explained how his involvement with methamphetamine began and when he began distributing drugs, and he identified and described his contacts in detail.

Late in the interview, the defendant asked for assurances that the interview was confidential.  The following dialogue occurred:

Garlewicz:          If everything that we do and say in here
                    stays 100% confidential . . .

Officer McCarty:    As much as I can. . . you know.

Garlewicz:          It does not leak.

Officer McCarty:    Well, I'll tell you what.  Nothing you tell
                    me right now is going any further than right
                    here.  Now, if I find out that you're lying

---

[1]The officer apparently anticipated that the interview would take only a half hour.  Ex. 4 at 01:00-01:05.  Early in the interview, the officer attempted to dissuade the defendant from providing extraneous details when answering questions.  The officer explained that the defendant would probably provide a more detailed interview, called a proffer, at a later time which would cover the defendant's entire history with drugs.  Ex. 4 at 06:55-7:20.

> to me, then it's different.  But if I find
> out you're telling me the truth and I think
> it can benefit you, and more importantly
> benefit me, then I'll come down here and tell
> you.  And I'll tell you what my thoughts are,
> and what I'm going to do. . . .

Ex. 4 at 48:21-49:00.  The defendant then began to offer
additional information before the officer asked another question.
The defendant explained, "I've been thinking ever since I decided
to talk to you who I could talk to you about."  Ex. 4 at 52:02-
52:08.

   The defendant was articulate, and his answers were coherent.
His answers were responsive to the questions asked, indicating he
understood the questions.  The officer's demeanor was
professional, pleasant, and calm throughout; he never used a
demanding tone.  The defendant wept momentarily during the
interview, but he immediately regained his composure in response
to the comments.  At no time did the defendant ask the officer to
stop the questioning, refuse to answer any questions, or request
a lawyer.

   At the close of the interview the officer reminded the
defendant not to tell anyone he provided a statement, but added,
"Talk to your attorney if. . ."  At this point, the defendant
interjected and may have said, "I don't have one."[2]  Ex. 4 at
53:48-53:49.  The officer continued, "ah, well, if you have a
chance to, talk to your attorney and see what they think.  I will
never tell anybody not to talk to their attorney."  Ex. 4 at
53:45-53:58.  The defendant responded by asking if the officer

---

   [2]The defendant's audible response is very faint at this
portion of Exhibit 4.

would help with lowering the bond.  The officer refused to provide such assistance at that time.

At the conclusion of the interview, despite the defendant's request for a commitment, the officer would not state whether he considered the defendant's information to be beneficial to the police.  The officer advised the defendant that he "did the right thing" by providing a statement, and further apprised the defendant that there was "nothing lost by talking to me."  Ex. 4 at 55:35-55:41.  No further questioning by the officer occurred after he made this statement.

## LEGAL ANALYSIS

The government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of <u>Miranda</u> rights was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege.  <u>United States v. Black Bear</u>, 422 F.3d 658 (8th Cir. 2005).  A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right.  A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.  <u>Thai v. Mapes</u>,  412 F.3d 970, 977 (8th Cir. 2005).  The ultimate question is whether the defendant's will to remain silent was overborne and his capacity for self-determination critically impaired.  <u>United States v. Santos-Garcia</u>, 313 F.3d 1073, 1079 (8th Cir. 2002).

The defendant was advised of his <u>Miranda</u> rights following his arrest and before he was questioned on October 20, 2005.

However, he claims he was under the influence of methamphetamine, and therefore unable to knowingly and voluntarily waive those rights. "[T]he mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary." (United States v. Gipp, 147 F.3d 680, 686 (8th Cir. 1998). "In each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions." United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir.1986) (consent to search voluntary despite use of cocaine where the defendant answered questions intelligently, and his responses to questioning were coherent and rational). See also Gipp, 147 F.3d at 686 (holding consent to search voluntary despite use of marijuana where evidence indicated the defendant answered questions intelligently, behaved rationally, and other than some nervous behavior, he appeared normal); United States v. Turner, 157 F.3d 552, 555-56 (8th Cir. 1998)(holding that despite the defendant's PCP intoxication, he appeared to knowingly and intelligently waive his Miranda rights where he was cooperative, reviewed and initialed each admonition of the waiver form, agreed to answer questions, and provided accurate information); United States v. Martin, 28 F.3d 742, 745 (8th Cir. 1994)(holding the defendant knowingly and voluntarily waived his Miranda rights where, although he had ingested methamphetamine shortly before his questioning, officers testified that he did not appear to be under the influence of drugs and the magistrate judge compared his speech during the statement and at the suppression hearing and noted no difference in his voice or speech pattern).

As to the October 20, 2005 statement, the government has introduced evidence that when responding to Officer McCarty's

brief questioning, the defendant appeared to be unable to focus,
was fidgety, and had difficulty speaking.  There is no evidence
at to whether the defendant appeared rational, or whether his
answers, though perhaps delayed or garbled, were nonetheless
accurate, coherent, and responsive to the officer's questions.
Shortly into the questioning, the officer concluded the defendant
was incapable of answering questions due to his drug-impaired
mental state, and he therefore appropriately stopped the
questioning.

Under the totality of this evidence, I conclude the
government has failed to prove that on October 20, 2005, the
defendant was able to know what he was doing or reasonably
appreciate the nature and significance of any waiver of his
Miranda rights.  The defendant's drug-induced mental impairment
rendered him unable to knowingly and voluntarily waive his
Miranda rights on October 20, 2005, and any statements made in
response to Officer McCarty's post-arrest questioning on that
date should be suppressed.

Officer McCarty's next contact with the defendant occurred
on November 3, 2005, after state charges had been filed and
counsel had been appointed to represent the defendant on those
charges.  Officer McCarty questioned the defendant without his
counsel's knowledge or consent.  The defendant contends this
interrogation violated the Sixth Amendment and must be
suppressed.

The right to counsel guaranteed under the Sixth Amendment
includes the right to have counsel present at post-arraignment
interrogations.  Michigan v. Jackson, 475 U.S. 625, 629 (1986).
In the context of the Fifth Amendment, the Supreme Court held in

11

<u>Edwards v. Arizona</u>, 451 U.S. 477, 484 (1981) that an accused
person in custody who has "expressed his desire to deal with the
police only through counsel, is not subject to further
interrogation by the authorities until counsel has been made
available to him, *unless the accused himself initiates further
communication, exchanges, or conversations with the police*."
<u>Edwards</u>, 451 U.S. at 484(emphasis added). <u>Jackson</u> applied the
reasoning in <u>Edwards</u> to a Sixth Amendment case, holding that "if
police initiate interrogation after a defendant's assertion, at
an arraignment or similar proceeding, of his right to counsel,
any waiver of the defendant's right to counsel for that
police-initiated interrogation is invalid." <u>Jackson</u>, 475 U.S. at
636.

However, even where the defendant has been charged and is
represented by counsel, the Sixth Amendment is not violated by
police questioning if:  1) the accused himself initiated the
dialogue with law enforcement, and 2) he knowingly and
intelligently elected to undergo questioning by the authorities
without the aid of counsel. <u>Patterson v. Illinois</u>, 487 U.S. 285,
291 (1988); <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983).
"[A]n accused can voluntarily, knowingly and intelligently waive
his right to have counsel present at an interrogation after
counsel has been appointed." <u>Williams v. Brewer</u>, 509 F.2d 227,
233 (8th Cir. 1974).  The right to waive counsel belongs to the
defendant, and he can exercise the right to waive counsel
independently, without the aid or advice of counsel, and outside
his counsel's presence.  <u>Moore v. Wolff</u>, 495 F.2d 35, 37 (8th
Cir. 1974); <u>State v. Moore,</u> 189 Neb. 354, 359 (1972)(rejecting
the defendant's argument that under <u>Miranda</u>, "once counsel is
appointed or has been retained there can be no waiver unless it
be by counsel or in his presence.").

12

> If an accused can voluntarily, knowingly, and
> intelligently waive his right to counsel before one has
> been appointed, there seems no compelling reason to
> hold that he may not voluntarily, knowingly, and
> intelligently waive his right to have counsel present
> at an interrogation after counsel has been appointed.

Moore, 495 F.2d at 37.

The evidence in this case establishes that the defendant initiated the contacts with Officer McCarty on November 3, 2005. Two of his requests to speak with the officer were in written kites, and one request was verbally conveyed to the officer by the defendant's stepsister.  When Officer McCarty met with the defendant, he confirmed at the outset that the defendant still wanted to speak with him.  As defense counsel has conceded, the defendant clearly initiated the November 3, 2005 conversation with Officer McCarty.

Even if the conversation with law enforcement was initiated by the accused, the prosecution must prove the defendant's purported waiver of his right to counsel was knowing, voluntary, and intelligent.  Bradshaw, 462 U.S. at 1044.  The court must consider the totality of the circumstances, "including the necessary fact that the accused, not the police," opened the dialogue.  Bradshaw, 462 U.S. at 1044-45.  "[T]he key inquiry in a case such as this one must be:  Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel?"  Patterson, 487 U.S. at 292-93.  "[T]his determination depends 'upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'"  Bradshaw, 462 U.S. at

13

1046 (quoting <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-375
(1979)(quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

> "[W]here the defendant has previously invoked his right to
counsel, 'the validity of any subsequent waiver of either the
fifth or sixth amendment right to counsel is judged by
essentially the same standard.'" <u>Pittman v. Black</u>, 764 F.2d 545,
547 (8th Cir. 1985)(quoting <u>Fields v. Wyrick</u>, 706 F.2d 879, 881
(8th Cir. (1983)).  As explained in <u>Patterson</u>:

> First, the <u>Miranda</u> warnings given petitioner made
> him aware of his right to have counsel present during
> the questioning.  By telling petitioner that he had a
> right to consult with an attorney, to have a lawyer
> present while he was questioned, and even to have a
> lawyer appointed for him if he could not afford to
> retain one on his own, [the officers] conveyed to
> petitioner the sum and substance of the rights that the
> Sixth Amendment provided him.  "Indeed, it seems
> self-evident that one who is told he" has such rights
> to counsel "is in a curious posture to later complain"
> that his waiver of these rights was unknowing.  Cf.
> <u>United States v. Washington</u>, 431 U.S. 181, 188, 97
> S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977).  There is
> little more petitioner could have possibly been told in
> an effort to satisfy this portion of the waiver
> inquiry.
>
> Second, the <u>Miranda</u> warnings also served to make
> petitioner aware of the consequences of a decision by
> him to waive his Sixth Amendment rights during
> postindictment questioning.  Petitioner knew that any
> statement that he made could be used against him in
> subsequent criminal proceedings.  This is the ultimate
> adverse consequence petitioner could have suffered by
> virtue of his choice to make uncounseled admissions to
> the authorities.  This warning also sufficed-contrary
> to petitioner's claim here. . . to let petitioner know
> what a lawyer could "do for him" during the
> postindictment questioning:  namely, advise petitioner
> to refrain from making any such statements.  By knowing
> what could be done with any statements he might make,
> and therefore, what benefit could be obtained by having

the aid of counsel while making such statements,
petitioner was essentially informed of the possible
consequences of going without counsel during
questioning.  If petitioner nonetheless lacked "a full
and complete appreciation of all of the consequences
flowing" from his waiver, it does not defeat the
State's showing that the information it provided to him
satisfied the constitutional minimum.  Cf. <u>Oregon v.
Elstad</u>, 470 U.S. 298, 316-317, 105 S.Ct. 1285,
1296-1297, 84 L.Ed.2d 222 (1985).

<u>Patterson</u>, 487 U.S. at 293-94.

Officer McCarty did not question the defendant on November
3, 2005 until after he advised the defendant of his rights under
<u>Miranda</u>, including the defendant's right to have an attorney
present and the potential consequences of making a statement.  A
written <u>Miranda</u> form was read aloud, the defendant was afforded
the opportunity to read it, and he acknowledged he was aware of
his rights by signing the form.  Then the written <u>Miranda</u> waiver
was read aloud and presented to the defendant.  The defendant
signed the form waiving his <u>Miranda</u> rights.  "[C]ases in which a
defendant can make a colorable argument that a self-incriminating
statement was 'compelled' despite the fact that the law
enforcement authorities adhered to the dictates of <u>Miranda</u> are
rare."  <u>Dickerson v. United States</u>, 530 U.S. 428, 444
(2000)(quoting <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433, n. 20
(1984)).

To determine if the defendant has presented one of those
rare cases, the court must consider the totality of the
circumstances surrounding the defendant's November 3, 2005
statement, focusing on both the conduct of the officers and the
defendant's capacity to resist pressure to confess.  <u>United
States v. Astello</u>, 241 F.3d 965, 967 (8th Cir. 2001).  "The
appropriate test for determining the voluntariness of a

confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." Astello, 241 F.3d at 967.

The defendant was thirty-seven years old on November 3, 2005. He spoke English, and was able to read and write English. See exs. 1 & 2. The defendant initiated the contact with Officer McCarty, and this initiation was neither reactive nor spontaneous: The defendant asked on two separate occasions, in writing, to speak to Officer McCarty; apparently told his stepsister to contact the officer; and acknowledged during the questioning, "I've been thinking ever since I decided to talk to you who I could talk to you about." Ex. 4 at 52:02-52:08. Before reading the defendant his rights, the officer confirmed that the defendant was still interested in speaking with the officer.

The defendant had been held in the Buffalo County jail since his arrest on October 20, 2005, and on November 3, 2005 he no longer appeared to be under the influence of methamphetamine. The defendant's speech pattern, tone, and responses to the questioning, as reflected in his recorded statement, indicate he was rational and coherent, and he was certainly not reluctant to speak to the officer. Though the defendant was in custody and interviewed at the jail, there is no indication he was intimidated by the officer or his surroundings. The officer's tone throughout the interview was very professional and courteous. His questions were straightforward. Officer McCarty was unarmed.

16

The defendant's primary claim is that he was induced to give a statement because he was promised or led to believe that the officer would not prepare a federal indictment package if the defendant cooperated.  However, the defendant's statements were offered in the hope that the case would not "go federal." Officer McCarty made no such promise.  The officer candidly advised the defendant that he was "putting together a federal indictment package," and then explained, "If you can convince me that . . . it's in my best interest not to go that route, . . . then I'd be more than happy to talk to you.  If not, you know, I mean you know the road you're going down, so we can work some stuff out, but I'll let you have the floor."  Ex. 4 at 02:58-4:00.  The defendant responded, "I'll do whatever it takes to make sure that I don't get federally indicted.  Make sure that I don't go to prison . . . ."  Ex. 4 at 02:58-4:00.  Later in the interview, when the defendant asked for reassurance that the statement was confidential, Officer McCarty explained:

> Nothing you tell me right now is going any further than right here.  Now, if I find out that you're lying to me, then it's different.  But if I find out you're telling me the truth and I think it can benefit you, and more importantly benefit me, then I'll come down here and tell you.  And I'll tell you what my thoughts are, and what I'm going to do. . . .

Ex. 4 at 48:21-49:00.  Neither comment by Officer McCarty was a promise of leniency.  Officer McCarty may well have told or implied that it was in defendant's best interest to cooperate, but there is no indication he engaged in any direct or implied promises, coercive tactics, or threats to induce cooperation. Rachlin v. United States, 723 F.2d 1373, 1378 (8th Cir. 1983)(holding no promises were made where Secret Service agents offered no "deal" to the defendant at the time of his statements,

they were not relaying a prosecution offer, and attorneys for the
government were not present).

Even had the defendant been promised some form of leniency
in exchange for a statement, this circumstance alone would not
make the defendant's waiver of his right to counsel involuntary.
United States v. Rivera, 370 F.3d 730, 733-734 (8th Cir. 2004).
The test is not whether promises were made, but whether, under
the totality of the circumstances, the defendant waived counsel
because his "will was overborne and his capacity for
self-determination critically impaired." United States v.
Astello, 241 F.3d 965, 967 (8th Cir. 1995)(holding a confession
was voluntary where the agents stated the case could proceed in
either state or federal court, and implied the defendant would
get something less than life in prison if he confessed, but also
specifically told him they could not make any promises).  See
also Rivera, 370 F.3d at 733-734 (denying suppression of a
statement where the defendant claimed police promised him
leniency, but there was no evidence of threats or promises of
freedom in exchange for his cooperation, the defendant initiated
much of the contact and conversation with the officers, he was
eager to cooperate, and his free will was not overborne); United
Stated v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995)(refusing to
suppress a statement where the defendant signed a Miranda waiver
but claimed the officer promised he would not go to jail if he
confessed--a defendant's mistaken belief that he was promised
some form of leniency does not alone make the confession
involuntary.).

Under the totality of the facts before me, it is apparent
the defendant decided to provide a statement before he ever spoke
to the officer--he asked for the interview and was trying to

remember the identity of persons he could talk about before
Officer McCarty arrived.   Under such facts, any inducement by the
officer did not cause the defendant's decision or render it
involuntary.   <u>Astello</u>, 241 F.3d at 967 (holding that refusing to
allow a young defendant to speak with his mother did not render
the statement involuntary where he asked to see his mother after
he had already decided to confess).   The defendant was not
threatened or coerced to waive his right to counsel.   He invited
the officer to conduct the interview, and eagerly cooperated in
the interview, even after being reminded that no promises of
leniency had been or would be made that day.   He was advised of
his right to counsel, and was mentally capable of deciding
whether to waive that right.

The defendant's decision to waive his right to counsel on
November 3, 2005 was freely and voluntarily given.   There is no
Sixth Amendment basis for suppressing the statement.

Section 1B1.8 of the sentencing guidelines also provides no
authority for suppressing the November 3, 2005 statement at trial
or sentencing.   Section 1B1.8 of the Guidelines provides:

> Where a defendant agrees to cooperate with the
> government by providing information concerning unlawful
> activities of others, and as part of that cooperation
> agreement the government agrees that self-incriminating
> information provided pursuant to the agreement will not
> be used against the defendant, then such information
> shall not be used in determining the applicable
> guideline range, except to the extent provided in the
> agreement.

U.S.S.G. § 1B1.8(a).

Cooperating with officers and entering into a cooperation
agreement under § 1B1.8 are not the same thing.   Section 1B1.8

applies only when two separate agreements have been negotiated: (1) the defendant's agreement to cooperate with the government by providing the requisite information, and (2) the government's agreement not to use that information against the defendant. United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997). Even when an officer promises that cooperation will help the defendant, the statements need not be suppressed under § 1B1.8 where the officer did not promise that incriminating statements made in the course of cooperation would not be used against the defendant, especially when the defendant was advised of his Miranda rights and was thereby warned that the statements could be used against him. Roman-Zarate, 115 F.3d at 781-82. See also United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir. 1990)(holding § 1B1.8 inapplicable where the officer stated defendant's cooperation would be helpful to him, but did not promise him that if in cooperating, he confessed to other crimes the information would not be used against him); United States v. Willard, 919 F.2d 606, 608 (9th Cir. 1990)(holding the statement by an agent that "[w]e'd like you to cooperate, and if you do cooperate, we'll make the extent of that cooperation known to the U.S. Attorney" was not a § 1B1.8(a) agreement).

There is no evidence that Officer McCarty promised not to use the defendant's November 3, 2005 statement against him. To the contrary, the Miranda rights read to the defendant prior to questioning reminded the defendant that his incriminating statements could be used at trial. Since no § 1B1.8 cooperation agreement was formed, § 1B1.8 of the sentencing guideline provides no basis for suppressing the defendant's November 3, 2005 statement.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C.

§636(b)(1)(B), that the defendant's motion to suppress, filing 13, be granted in part and denied in part as follows:

   a.    The defendant's post-arrest statements made in response to interrogation by Officer McCarty on October 20, 2005 be suppressed; and

   b.    The defendant's statements to Officer McCarty made on November 3, 2005 not be suppressed.

   The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

   IT FURTHER HEREBY IS ORDERED:  Trial is set for 9:00 a.m. on August 21, 2006 for a duration of four trial days before the Honorable Richard G. Kopf.   Jury selection will be at the commencement of trial.

   DATED this 9th day of June, 2006.

                      BY THE COURT:

                      s/ *David L. Piester*
                      David L. Piester
                      United States Magistrate Judge